

# NUMBER 13-17-00699-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**KEVIN TOLEDO,**                                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                        **Appellee.**

**On appeal from the 148th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Rodriguez[1]
Memorandum Opinion by Justice Rodriguez**

Appellant Kevin Toledo appeals his conviction of one count of assault causing

bodily injury to a family member with a previous conviction, a second-degree felony, and

---

[1] Retired Thirteenth Court of Appeals Justice Nelda Rodriguez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003.

one count of assault causing bodily injury to a family member with a previous conviction by choking, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.01. Toledo contends there was legally insufficient evidence to support the verdict and that he received ineffective assistance of counsel. We affirm.

## I.     BACKGROUND

At Toledo's trial, Nina Greses testified that she and Toledo had been in a romantic relationship for about eight months. On the morning of July 11, 2016, Nina and Toledo were asleep together in his bedroom when Nina woke up in pain due to an illness. She woke Toledo up after two or three attempts and claims Toledo became upset about her pain because he planned to pay off some of his community supervision fees that day. According to Nina, Toledo then "head-butted" her in the nose twice, violently pushed her, and physically threw her around the room onto the bed and couch. At one point, he threw her against his bathroom door, causing Nina to break the door.

After Toledo calmed down and returned to bed, Nina confronted him about a text message he received from another woman. Toledo then "tried to stop [Nina] from breathing forcefully with his own hands" by wrapping his hands around her throat and neck. When she escaped his hold, Nina claims Toledo threw her onto the bed while threatening her with a wooden bat he was holding. With a closed fist, he hit her in the left eye, on the back of her head, and on her left shoulder.

Nina's mother, Marina Greses, testified that Nina texted her on July 11, 2016, asking Marina to come pick her up but instructed her not to call or text back. Marina noticed that Nina acted strange for the remainder of the day. The following day, Nina waited for Toledo in his vehicle while he was in the community supervision office. She

2

called her mother and told her that Toledo "beat her up." She sent photos of her injuries. Marina convinced her to seek help inside the community supervision office, which was also Marina's place of employment.

Nueces County Probation Officer Elizabeth Davila testified that she received and assisted Nina on July 12, 2016 and that Nina was visibly upset and crying while explaining that Toledo assaulted her. According to Officer Davila, Nina had a black eye, bruising and scratching on her arms, and knots and bumps on her head.

Detective Robert McFarland with the Corpus Christi Police Department assisted with the investigation. He testified that he noticed Nina had visible injuries including a black eye, redness above her forehead, bruising on both her arms, backs of her shoulder, and upper chest. He took photos of Nina on July 12, 2016, which were admitted into evidence. Detective McFarland testified that at least two of the photographs he took showed red marks on the left side of Nina's lower neck and some redness to the right side of the lower base of her neck. Nina confirmed that the dark areas around her neck were a result of Toledo choking her.

Toledo testified that he did not assault Nina. According to Toledo, Nina and Marina had a history of getting into physical altercations, and Nina's mother caused Nina's injuries in this case. Toledo claimed that four days prior to July 11, 2016, he witnessed Nina and Marina pushing each other around and that he waited in his vehicle because he did not want to witness the physical altercation. According to Toledo, after about fifteen minutes, Nina returned to Toledo's vehicle with bruises, a black eye, and scratches.

A jury convicted Toledo, and he was sentenced to ten years imprisonment for one count of assault causing bodily injury to a family member with a previous conviction, a

3

second-degree felony, and fifteen years imprisonment for one count of assault causing bodily injury to a family member with a previous conviction by choking, a third-degree felony.  *See* TEX. PENAL CODE ANN. § 22.01.  This appeal followed.

## II.    SUFFICIENCY

By his first issue, Toledo argues that because the medical report in Nina's case did not indicate that she was choked and because Nina remembered she was allegedly choked days after the incident, the evidence is therefore insufficient to support his conviction of assault causing bodily injury to a family member with a previous conviction by choking, a third-degree felony.[2]  We disagree.

## A.    Standard of Review and Applicable Law

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  We "determine whether 'the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'"  *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).

The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony.  *Id*.  Our role is to ensure only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt.  *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988) (en banc).  When the

---

[2] On appeal, Toledo only challenges the legal sufficiency for the third-degree felony; therefore, we will not address the second-degree felony.

reviewing court is faced with a record supporting contradicting inferences, we must presume that the jury resolved any such conflict in favor of the verdict, even if it is not explicitly stated in the record. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc)). A hypothetically correct charge here would instruct the jury to find Toledo guilty of assault of a family member if Toledo: (1) intentionally, knowingly, or recklessly caused bodily injury; (2) to Nina; (3) with whom Toledo has or has had a dating relationship, or with whom Toledo is a family or household member; (4) Toledo had a prior conviction for assault involving family violence; and (5) Toledo impeded the normal breathing or circulation of the person.[3] TEX. PENAL CODE ANN. § 22.01(b-1).

## B. Discussion

Count Two of Toledo's indictment provides, in relevant part, the following:

> On or about July 11, 2016, in Nueces County, Texas, [Toledo] did then and there intentionally, knowingly, and recklessly cause bodily injury to [NINA], . . . a person with whom [Toledo] had had a dating relationship as described by Section 71.003 or 71.005 or 71.002(b) of the Texas Family Code, by intentionally, knowingly, and recklessly impeding the normal breathing or circulation of the blood of [Nina] by applying pressure to the throat or neck AND/OR blocking the nose or mouth . . . .

Nina testified that during an ongoing assault on July 11, 2016, Toledo placed both hands around her neck and choked her until she could no longer breathe. She testified that she was in pain for over a week. She described how she was able to break free from

---

[3] On appeal, Toledo only challenges the jury's finding that he impeded Nina's normal breathing or circulation; therefore, we only address this element.

his grasp, and she identified Toledo as the sole person who caused the injury. *See Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016) (holding that a victim's testimony alone was enough to convict the defendant of impeding breath or circulation); *see also Johnson*, 23 S.W.3d at 7. Moreover, Detective McFarland testified that Nina told him Toledo assaulted her and that at least two photographs showed "redness" to the left and right side of her neck area. Nina also confirmed that the photographs showed the bruising on her neck from Toledo choking her. Officer Davila also testified that Nina blamed Toledo for her injuries. Although Toledo testified that it was Nina's mother that assaulted her and not him, it was the jury's task to assign weight to that evidence, along with other evidence it received. *Morgan*, 501 S.W.3d at 89. Thus, based on our review of the evidence and reasonable inferences therefrom, we conclude a rational jury could have found that Toledo committed family violence assault by impeding breath or circulation beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 899. Accordingly, we overrule his first issue.

### III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Toledo complains that his counsel was ineffective because he allowed the State to read the indictment in front of the jury and allowed Toledo to testify.

### A.    Standard of Review

To prevail on a claim of ineffective assistance of counsel, appellant must prove by a preponderance of the evidence that: (1) counsel's performance fell below the standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's deficiency, taking into account the totality of the evidence before the judge or jury, the result of the trial would have been different. *Ex parte*

6

*Martinez*, 330 S.W.3d 891, 900–01 (Tex. Crim. App. 2011); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to show either deficient performance or sufficient prejudice under *Strickland* defeats a claim for ineffective assistance. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

The burden is on the defendant to prove ineffective assistance of counsel by a preponderance of the evidence, and we review counsel's effectiveness by the totality of the representation, not by isolated acts or omissions. *Id*.; *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). To show deficient performance, the defendant must overcome the strong presumption that the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689; *see State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate"). If there is any basis for concluding that counsel's conduct was strategic, then further inquiry is improper. *See Morales*, 253 S.W.3d at 696; *Busby v. State*, 990 S.W.2d 263, 268 (Tex. Crim. App. 1999) ("Judicial scrutiny of counsel's performance must be highly deferential."). "[W]e commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Normally, the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Thompson*, 9 S.W.3d at 813–14; *Busby*, 990 S.W.2d at 269. "[T]he record on direct appeal is usually undeveloped and inadequately reflective of the reasons for defense counsel's actions at trial." *Mata v.*

7

*State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallet v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). "The lack of a clear record usually will prevent the appellant from meeting the first part of the *Strickland* test, as the reasonableness of counsel's choices and motivations during trial can be proven deficient only through facts that do not normally appear in the appellate record." *Mata*, 226 S.W.3d at 430. Thus, claims of ineffective assistance of counsel are better suited to an application for writ of habeas corpus or motion for new trial where the record can be developed to include defense counsel's insight into his decisions. *Id*.; *Freeman v. State*, 125 S.W.3d 505, 511 (Tex. Crim. App. 2003).

**B.  Discussion**

Toledo claims that his trial counsel was ineffective because he failed to object to the State's reading of the enhancement paragraph at the commencement of the guilt innocence stage, thereby waiving Toledo's right to argue on appeal that he was denied a fair trial. However, "the allegation of the prior assault conviction is also an element of the offense of assault causing bodily injury when pled as a third-degree felony." *Reyes v. State*, 314 S.W.3d 74, 81 (Tex. App.—San Antonio 2010, no pet.). Thus, even if Toledo objected to the State's reading of the indictment, the State would have been permitted to read the full indictment to the jury to prove an element of third-degree assault causing bodily injury. *See id*; *Wingfield v. State*, 481 S.W.3d 376, 379 (Tex. App.—Amarillo 2015, pet. ref'd) (holding that a prior conviction for assault of a member of the defendant's family or household is an essential element of third-degree assault of a member of defendant's family or household).

Even if the prior offense allegation was not an element of the charged offense, the failure to object to the State's reading of an enhancement paragraph does not necessarily constitute ineffective assistance of counsel. *See Hardin v. State*, 951 S.W.2d 208, 212 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (holding that trial counsel's failure to object at trial to the State's reading of enhancement paragraphs at the guilt-innocence phase of trial did not constitute ineffective assistance of counsel, where counsel's strategy may have been an attempt to avoid calling further attention to appellant's prior convictions); *see also Tate v. State*, No. 13-09-00247-CR, 2011 WL 1938501, at *3 (Tex. App.—Corpus Christi–Edinburg May 12, 2011, no pet.) (mem. op., not designated for publication) ("[T]he failure to object to a prosecutor's reading of an enhancement paragraph does not necessarily constitute ineffective assistance of counsel."). Toledo's trial counsel explained to the jury that Toledo was on a "type of probation for an assault, family violence," and the "reason we're telling you that [is] because we want your focus on the cases at hand here, which is with Nina. So, we're not trying to hide that fact or anything." Thus, Toledo's counsel's trial strategy may have been that he did not want to call further attention to his prior conviction. *See Oliva v. State*, 942 S.W.2d 727, 733 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd) (counsel's failure to object to the prosecutor's alleged misstatement regarding appellant's prior conviction may have been trial strategy to avoid overemphasizing prior conviction).

Toledo also argues his trial counsel "failed to present a plausible defensive theory" by allowing Toledo to testify on his own behalf. Yet, Toledo did not file a motion for new trial due to ineffective assistance of counsel; consequently, his trial counsel was not given an opportunity to explain any reasoning behind its conduct. *See Mata*, 226 S.W.3d at

430.  Moreover, Toledo asserted his right to testify, and he testified that he did not assault Nina.  *See Salinas*, 163 S.W.3d at 734 ("Every criminal defendant is privileged to testify in his own defense, or refuse to do so.").  Thus, the record does not affirmatively demonstrate that his trial counsel's performance in allowing him to take the stand on his own behalf was "so outrageous that no competent attorney would have engaged in it." *Andrews,* 159 S.W.3d at 101.  Accordingly, we cannot conclude that defense counsel's efforts fell below a reasonable level of professional assistance.  *See Morales*, 253 S.W.3d at 696.  Therefore, we do not need to address the second *Strickland* prong.  *See Mata*, 226 S.W.3d at 433 (finding it unnecessary to address the second *Strickland* prong if the first prong has clearly not been met).  We overrule his second issue.

## IV.  CONCLUSION

Having overruled Toledo's issues, we affirm the trial court's judgment.

NELDA RODRIGUEZ,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
15th day of August, 2019.